UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RENEE HILLS, | ) | Case No. CV 12-5352 JC |
| Plaintiff, | ) ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

## I. SUMMARY

On July 11, 2012, plaintiff Renee Hills ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; July 13, 2012 Case Management Order ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On August 8, 2008, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits. (Administrative Record ("AR") 19, 123-31). Plaintiff asserted that she became disabled on July 16, 2007, due to seizures, high blood pressure, diabetes, an enlarged heart, high cholesterol, and lupus. (AR 160). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel), a medical expert, and a vocational expert on September 29, 2010. (AR 37-63).

On January 10, 2011, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 19-30). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: hypertension, diabetes mellitus, obesity, abdominal mass, and Systemic Lupus Erythematosus ("SLE" or "lupus") (AR 21); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 22-23); (3) plaintiff retained the residual functional capacity to perform light work with additional limitations (20 C.F.R. §§ 404.1567(b), 416.967(b))[2] (AR 23);

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of application of harmless error standard in social security cases) (citing, *inter alia*, Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

[2] The ALJ determined that plaintiff (i) could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds; (ii) could stand and walk for a total of six hours in an eight-hour workday; (iii) could sit for a total of six hours in an eight-hour workday and two hours at one time in an eight-hour workday; (iv) could occasionally bend, stoop, crawl, and climb stairs; (v) could not climb ladders, rope or scaffolds; and (vi) needed to avoid unprotected heights, and dangerous or mechanized equipment. (AR 23).

(4) plaintiff could not perform her past relevant work (AR 28); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically office helper, cashier II, and storage facility rental clerk (AR 29); and (6) plaintiff's allegations regarding her limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 27).

The Appeals Council denied plaintiff's application for review. (AR 1).

### III. APPLICABLE LEGAL STANDARDS

#### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R.

|   |   |   |
|---|---|---|
| | | Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four. |
| | (4) | Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five. |
| | (5) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

### B.   Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

1    To determine whether substantial evidence supports a finding, a court must
2    "'consider the record as a whole, weighing both evidence that supports and
3    evidence that detracts from the [Commissioner's] conclusion.'" Aukland v.
4    Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
5    953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
6    or reversing the ALJ's conclusion, a court may not substitute its judgment for that
7    of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV.  DISCUSSION

### A.  The ALJ Properly Evaluated the Medical Opinion Evidence

#### 1.  Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[3]  See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

---

[3]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

1    The treating physician's opinion is not, however, necessarily conclusive as
2 to either a physical condition or the ultimate issue of disability. Magallanes v.
3 Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d
4 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not
5 contradicted by another doctor, it may be rejected only for clear and convincing
6 reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal
7 quotations omitted).  The ALJ can reject the opinion of a treating physician in
8 favor of another conflicting medical opinion, if the ALJ makes findings setting
9 forth specific, legitimate reasons for doing so that are based on substantial
10 evidence in the record. Id. (citation and internal quotations omitted); Thomas v.
11 Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out
12 detailed and thorough summary of facts and conflicting clinical evidence, stating
13 his interpretation thereof, and making findings) (citations and quotations omitted);
14 Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to
15 reject a treating physician opinion – court may draw specific and legitimate
16 inferences from ALJ's opinion).  "The ALJ must do more than offer his
17 conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must
18 set forth his own interpretations and explain why they, rather than the
19 [physician's], are correct." Id.  "Broad and vague" reasons for rejecting the
20 treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599,
21 602 (9th Cir. 1989).

       **2.     Analysis**

In a July 24, 2009 Lupus (SLE) Residual Functional Capacity Questionnaire, Dr. Jaffar A. Tremazi, plaintiff's treating rheumatologist, diagnosed plaintiff with SLE and opined that plaintiff (i) suffered from severe fatigue, severe malaise, and hair loss; (ii) had symptoms that were frequently severe enough to interfere with attention and concentration; (iii) was incapable of engaging in even "low stress" jobs due to her pain; (iv) could walk only half a city

block before she needed to rest; (v) could sit for only 20 minutes at one time; (vi) could stand for only 15 minutes at one time; (vii) could sit and/or stand/walk less than two hours total in an eight-hour working day (with normal breaks); (viii) needed to be able to shift positions at will from sitting to standing or walking; (ix) needed to take unscheduled half hour breaks every two hours in an eight-hour working day so she could lie down or sit quietly; (x) could lift and carry no more than 10 pounds; (xi) could occasionally twist, stoop (bend), crouch and climb stairs, but never climb ladders; (xii) needed to avoid concentrated exposure to extreme cold/heat, high humidity, fumes/odors/dusts/gasses, perfumes, cigarette smoke, soldering fluxes, solvents/cleaners and chemicals; (xiii) had a condition which likely would produce "good days" and "bad days"; and (xiv) would likely be absent from work about three days per month as a result of her impairments or treatment (collectively "Dr. Tremazi's Opinions"). (AR 642-47). Plaintiff contends that a remand or reversal is warranted because the ALJ failed properly to consider Dr. Tremazi's Opinions. (Plaintiff's Motion at 5-8). The Court disagrees.

First, the ALJ properly rejected Dr. Tremazi's Opinions as unsupported by the physician's own notes or the record as a whole. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citation and internal quotation marks omitted); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"). For example, as both the ALJ and the testifying medical expert noted, Dr. Tremazi's treatment records for plaintiff do not document the severe symptoms identified in Dr. Tremazi's Opinions. (AR 26-28, 49-54). As the ALJ noted, many of Dr. Tremazi's records are either blank (AR 28, 390-95, 398-99,

7

599-600, 605-06, 611-14, 614), contain cryptic notes of routine follow up visits which, on the whole, reflect examinations of plaintiff that were within normal limits (AR 26, 28, 51-53, 290-93, 396-97, 565-66, 568, 601-04, 607-10, 615-16, 618-20), or contain lab reports which reflect no significant abnormalities or functional limitations (AR 26, 51-54, 400-11, 621-41).  While plaintiff suggests that the medical evidence reflects more significant functional limitations (Plaintiff's Motion at 6-8), this Court will not second-guess the ALJ's reasonable determination that it does not, even if such evidence could give rise to inferences more favorable to plaintiff.  See Robbins, 466 F.3d at 882 (citation omitted).

Second, the ALJ properly rejected Dr. Tremazi's Opinions in favor of the conflicting opinions of the state-agency examining physician, Dr. Seung Ha Lim (who essentially opined that plaintiff could do medium work) (AR 25, 28, 318-22), and the medical expert, Dr. Arnold Ostrow (who essentially testified that the record medical evidence supports the same residual functional capacity assessment for plaintiff which the ALJ adopted in the administrative decision) (compare AR 23 with AR 48-49).  The opinion of Dr. Lim was supported by the physician's independent examination of plaintiff (AR 319-21), and thus, even without more, constituted substantial evidence upon which the ALJ could properly rely to reject the treating physician's opinions.  See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  Dr. Ostrow's testimony also constituted substantial evidence supporting the ALJ's decision since it was supported by the other medical evidence in the record including Dr. Lim's opinion and underlying independent examination.  See Morgan, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it").

Finally, contrary to plaintiff's contention, the ALJ did not fail in his duty to develop the record because he did not recontact Dr. Tremazi "to seek clarification" of records the ALJ found to be illegible. (Plaintiff's Motion at 6-7). Although plaintiff bears the burden of proving disability, the ALJ has an affirmative duty to assist a claimant in developing the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted); Bustamante, 262 F.3d at 954; see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (ALJ has special duty fully and fairly to develop record and to assure that claimant's interests are considered). Here, Dr. Tremazi's July 24 Lupus (SLE) Residual Functional Capacity Questionnaire contained little more than check-box opinions without any specific explanation of the bases for the opinions.[4] (AR 642-47). The ALJ had no obligation to recontact Dr. Tremazi before rejecting the questionnaire. See De Guzman v. Astrue, 343 Fed. Appx. 201, 209 (9th Cir. 2009)[5] (ALJ has no obligation to recontact physician to determine the basis for opinions expressed in "check-off reports that d[o] not contain any explanation of the bases of their conclusions.") (citation and internal quotation marks omitted). Even so, the ALJ did not find that the record as a whole was ambiguous or inadequate to permit a determination of plaintiff's disability. To the contrary, the ALJ properly relied on the opinions of Drs. Ostrow and Lim which, as noted above, constituted substantial evidence that plaintiff was not disabled. Therefore,

---

[4] As the medical expert noted, Dr. Tremazi did check boxes which indicated that plaintiff had (1) a "[p]ositive LE cell preparation *or* anti-DNA *or* anti-Sm anti-body *or* false positive serum test for syphilis known to be positive for at least six months"; and (2) a "[p]ositive test for ANA at any point in time (in absence of drugs known to cause abnormality)." (AR 49; AR 643, Boxes 10, 11) (emphasis in original). The medical expert testified, however, that the medical records do not document such test results. (AR 49).

[5] Courts may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

even assuming Dr. Tremazi's medical records were inadequate to allow the ALJ to determine the basis for Dr. Tremazi's Opinions, the ALJ did not err in failing to seek clarification. See Bayliss, 427 F.3d at 1217 (no duty to recontact where other evidence in record is adequate for ALJ to reach a disability determination).

Accordingly, a remand or reversal on this basis is not warranted.

### B. The ALJ Properly Evaluated Plaintiff's Credibility

#### 1. Pertinent Law

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d 880 at 883 (citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted). The only time this standard does not apply is when there is affirmative evidence of malingering. Id. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily

///

discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; Social Security Ruling 96-7p. Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment. Burch, 400 F.3d at 681.

### 2. Analysis

Plaintiff contends that the ALJ inadequately evaluated the credibility of her subjective complaints. (Plaintiff's Motion at 8-13). The Court disagrees.

First, the ALJ properly discredited plaintiff's subjective complaints as inconsistent with plaintiff's daily activities. See Thomas, 278 F.3d at 958-59 (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel,188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony). For example, as the ALJ noted, contrary to plaintiff's allegations of disabling symptoms, during a psychological evaluation plaintiff reported that (1) she was able to drive a car without restriction and had a valid driver's license; (2) she could shower, bathe, get dressed, and groom herself without help; (3) she could pay bills and keep track of money without help from other people; and (4) in a typical day she would clean house, cook, do laundry, go to the store, and watch TV. (AR 28) (citing Ex. 6F at 3 [AR 325]).

While plaintiff correctly notes that "one does not need to be 'utterly incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001), this does not mean that an ALJ must find that a claimant's daily activities demonstrate an ability to engage in full-time work (*i.e.*, eight hours a day, five days a week) in order to discount the credibility of conflicting subjective symptom testimony. See Molina, 674 F.3d at 1113 ("[An] ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . [e]ven where those activities suggest some difficulty functioning. . . .") (citations omitted). Here, the ALJ properly discounted plaintiff's subjective-symptom testimony to the extent plaintiff's daily activities were inconsistent with a "totally debilitating impairment." Id.; see, e.g., Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair, 885 F.2d at 604). While plaintiff argues that the record does not reflect that she spent a "substantial part of [her] day" engaged in activities that "are transferable to a work setting" (Plaintiff's Motion at 11-13), the Court will not second-guess the ALJ's reasonable determination to the contrary, even if the evidence could give rise to inferences more favorable to plaintiff.

Second, the ALJ properly discounted plaintiff's credibility in part because plaintiff's allegations of disabling symptoms were not fully corroborated by the objective medical evidence. See Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted). As the ALJ noted, and as discussed above, treatment records reflect examinations of plaintiff that were generally within normal limits and/or showed

no significant abnormalities or functional limitations. (AR 24-27) (citing, *inter alia*, Exhibits 3F [AR 270-314], 4F [AR 315-16], 5F [AR 318-22], 13F [AR 379-89], 14F [AR 390-414], 18F [AR 433-597], 19F [AR 598-641], 22F [AR 659-771], 23F [AR 772-910]).

Finally, to the extent plaintiff complains that the ALJ failed expressly to reject plaintiff's allegations of disabling fatigue and pain (Plaintiff's Motion at 9-10), any error in this respect was harmless. Here, the medical expert testified that his residual functional capacity assessment for plaintiff, which the ALJ expressly adopted, incorporated plaintiff's complaints of "fatigue and malaise." (AR 27, 49, 54-55). Moreover, plaintiff points to no physical limitations related to her alleged fatigue and pain beyond those already accounted for in the ALJ's residual functional capacity assessment.

Accordingly, a remand or reversal on this basis is not warranted.

**V.    CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: January 22, 2013

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE